UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOANNE ZAVALIANOS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 10-12132-LTS |
| SOUTHERN FOLGER DETENTION EQUIPMENT CO., LLC, | ) ) ) ) |
| Defendant. | ) ) |

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

September 11, 2012

SOROKIN, C. M. J.

      Alex Zavalianos brought this action against Southern Folger Detention Equipment Co., LLC ("Southern Folger"), alleging that Southern Folger terminated his employment because of his age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623(a)(1), and the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 4(1B). On September 30, 2011, Mr. Zavalianos died. See Docket # 15. Thereafter, his wife, Joanne Zavalianos, was substituted as Plaintiff. See Docket #s 15, 17; Electronic Order of October 12, 2011.[1] Southern Folger now moves pursuant to Fed. R. Civ. P. 56 for summary judgment, asserting that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law. Docket # 25. While the Plaintiff's death and the subsequent inability to take depositions due to lack of funds has no doubt hampered the Plaintiff's ability to pursue this matter, the Court must nonetheless decide it based upon the present record.

---

[1] All references to "Zavalianos" throughout are to Mr. Zavalianos.

For the following reasons, Southern Folger's motion is ALLOWED.

I. FACTUAL AND PROCEDURAL BACKGROUND

Southern Folger designs, engineers, and manufactures a variety of products used in detention facilities.  Docket # 38 at ¶ 1.  Southern Folger's President, Donald Halloran, had sole and exclusive authority over hiring and firing decisions at Southern Folger.[2]  Id. at ¶ 2.  On March 31, 2008, Halloran hired Zavalianos as a member of Southern Folger's sales force.  Id. at ¶ 3.  At this time, Zavalianos was fifty-six years old and Halloran was forty-six years old.  Id. at ¶ 5.

During the week of January 11, 2010, Southern Folger held a meeting for its salespeople at its headquarters in San Antonio, Texas.  Id. at ¶ 24.  On January 13, 2010, during a presentation of a video-visitation unit, Zavalianos's Director of Sales and Marketing, James Brown, asked the presenter to "show us how to set up the video-visitation unit so someone like Alex can do it."  Id. at ¶ 25.  Zavalianos responded to this comment by reminding Brown that he had a degree in mechanical engineering.  Id. at ¶ 27.

During the same week, on January 15, 2010, Brown commented during a meeting that "when I first heard Alex's voice he sounded old and crotchety . . . and I was right."  Id. at ¶ 28.  That same day, Brown emailed Zavalianos at Halloran's direction as follows: "I apologize for my comment during the meeting.  Although it was meant in jest it was inappropriate and unacceptable for the professional setting of our meeting . . .  As I stated to you on the phone I

---

[2] Zavalianos maintains that there exists a genuine dispute of material fact as to Halloran's sole authority to hire and fire.  See Docket # 32 at 1 (citing Evers Affidavit, Docket # 36).  Evers affirms that when he was employed by Southern Folger as District Sales manager, supervising Zavalianos, he had hiring and firing authority and did not require Halloran's approval.  Docket # 36 at ¶ 5.  The Plaintiff does not dispute that Halloran actually hired and fired Zavalianos, whatever dispute she asserts exists regarding Halloran's sole authority to do so.  Thus, whatever dispute exists regarding this point is not material, as Halloran was the decisionmaker regarding hiring and firing and there is no evidence to the contrary.  See infra, at 7-8.

2

believe that you present yourself in a very professional manner and your demeanor projects Southern Folger in a very positive light." Id. at ¶¶ 31-32.

On March 7, 2010, Halloran sent an email to the entire sales force, stating:

the marketplace that we are experiencing currently isn't going away any time soon; I would even expect the marketplace to even get more difficult before it gets better . . . The old rules of how we operated and waited for work to fall our way is gone  . . . Our current trend is not good and we need to change this [ASAP].

Docket # 35 at 5.

On March 10, 2010, Halloran and Brown conducted an annual review of Zavalianos's sales performance during 2009. Id. at ¶ 6. During the meeting, Halloran made clear to Zavalianos that he was concerned about Zavalianos's poor sales performance in 2009.[3] Specifically, Zavalianos generated just $21,185 in sales in 2009 (one percent of his sales target). Id. The next day, Zavalianos emailed Halloran, stating that "2009 was a very difficult year because of the economy," and that "[t]he Performance Review . . . [had] left [him] feeling stunned." Docket # 27-1.  Halloran replied:

I don't believe I would disagree that you have developed some relationships in your territory.  The problem is that in two years you have generated a low amount of sales.  I thought I expressed this in our conversation on Monday and also during on my visits to New England.  As I pointed out on Monday we need to generate sales from your territory; the lack of work has resulted in us having to lay off employees . . . [Y]our job is to generate sales and that is the area that needs to change.

---

[3] Again, the Plaintiff maintains that this fact is disputed, and that Southern Folger has only its own "self-serving affidavits" as evidence. See Docket # 32 at 1-2. Litigants typically advance evidence supporting their positions, and the fact that the Halloran and Brown affidavits do so in no way undermines the competence of the evidence within. In an attempt to dispute Southern Folger's competent evidence, the Plaintiff points to a congratulatory note faxed to Zavalianos on March 31, 2009, which references a $407,000 sale, and a purchase order for materials priced at $79,800 which was faxed to Zavalianos on November 24, 2009. See Docket # 34 at 5-7. No affiant (other than counsel) authenticates the documents on behalf of the Plaintiff or explains their significance. In response, Southern Folger has submitted the affidavit of Frank Simmons, in which he affirms that while Zavalianos was involved in these sales, he "did not originate either sale," and that Mr. Simmons thus received the credit for these sales. See Docket # 41 at 1. Thus, the only competent evidence in the summary judgment record is that Zavalianos generated just $21,185 in sales in 2009. Regardless, Zavalianos has submitted nothing which counters the affidavits of Halloran and Brown as to the point that Halloran expressed concern regarding Zavalianos' sales performance in the March 10, 2010, performance review meeting.

Docket # 27-1.

On April 9, 2010, Susan Kreusch, of the Office of Facilities Maintenance & Management for the Commonwealth of Massachusetts, emailed Halloran as follows:

> What the heck is going on with Bristol County?  Apparently, Alex [Zavalianos] called someone at Bristol this morning and said if he didn't have a purchase order today, he will not do the job!  Right now there is a bad taste down there with how he is doing business with them.  Additionally, [Alex] was asked to provide a permit and said no, he doesn't have to.  I beg to differ, so we need to straighten this out ASAP.

Docket # 27-2.

The Commonwealth of Massachusetts is Southern Folger's most important customer in Massachusetts, and one of its most important customers in New England.  Docket # 38 at ¶ 15.

On April 16, 2010, Halloran made the decision to terminate Zavalianos.  Docket # 27 at ¶ 16.  Halloran also concluded that the information about Zavalianos's demeanor with customers might explain Zavalianos's low sales figures.  Id. at ¶ 17.

II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993).  Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported

speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009). "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir.1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (citation omitted).

III. DISCUSSION

The Plaintiff alleges discrimination on the basis of age in violation of the ADEA, 29 U.S.C. § 623(a)(1), and the Massachusetts Fair Employment Practices Act, M.G.L. chapter 151B, § 4(1B). Both the ADEA and the Massachusetts Fair Employment Practices Act prohibit employers from discriminating against employees on the basis of their age. See 29 U.S.C. § 623(a)(1); M.G.L. ch. 151B, §4(1B).

Absent direct evidence of discrimination (of which there is none here) both the ADEA and c. 151B claims are evaluated under the familiar burden-shifting standard of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 n. 2 (1st Cir.2009); Zaniboni v. Massachusetts Trial Court, 81 Mass.App.Ct. 216, 218 (2012). A plaintiff must first establish a prima facie case by showing: (1) that he or she was at least 40 years old at the time of discharge; (2) that he or she was qualified for the position but

was nevertheless fired; and (3) that the employer subsequently filled the position. Id. at 447. Southern Folger has not asserted that Zavalianos has failed to establish a prima facie case, and the Court assumes arguendo that he has.

With the Plaintiff having created a presumption of unlawful discrimination by establishing a prima facie case, the burden shifts to Southern Folger. Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005) (citing McDonnell Douglas, 411 U.S. at 802). At this second stage of the McDonnell Douglas analysis, Southern Folger must "articulate a legitimate, non-discriminatory reason for its decisions." Vélez 585 F.3d at 447 (quoting Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir.2008)). The reason advanced by Southern Folger for Zavalianos's termination (namely, that Halloran came to believe that he was alienating one of Southern Folger's most important customers) meets the Defendant's burden of production. See Marchant v. Tsickritzis, 506 F. Supp. 2d 63, 71 (D. Mass. 2007) (Finding that where "[i]t is undisputed that the company received customer complaints, although [the employee] challenges the legitimacy of such complaints," the employer "has met its burden of establishing a legitimate, non-discriminatory reason for its actions") (internal citations and quotations omitted); Swallow v. Fetzer Vineyards, 46 Fed. App'x 636, 647 (1st Cir. 2002) (finding that employer rebutted employee's prima facie case "by asserting that they terminated [the employee] because she treated . . . customers inappropriately").

At the third stage of the analysis, Zavalianos must show that Southern Folger's discriminatory animus contributed significantly to his termination, that it was a material and important ingredient in causing it to happen. Lipchitz v. Raytheon Co., 434 Mass. 493, 506 n.19 (2001). Under Federal law, Zavalianos has the opportunity to prove that "the legitimate reasons offered by [Southern Folger] were not its true reasons, but were a pretext for discrimination."

Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)).  "[Pretext] means something worse than a business error; [it] means deceit used to cover one's tracks." Id. (quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir.2000)).

Massachusetts law does not require that a plaintiff prove "that the reason was given to cover a discriminatory animus." Lipchitz, 434 Mass. at 500-01.  Rather, if the fact finder is persuaded that one or more of the Southern Folger's proffered reasons is false, it may (but need not) infer from that conclusion that Southern Folger is covering up a discriminatory intent, motive, or state of mind. Id. at 501.

The Plaintiff cannot meet her burden under either the Massachusetts or Federal standards. There is no evidence in the record attributing any age bias to Halloran, the decisionmaker.  The only evidence of age-related bias relates to comments made by Brown during a week-long conference for Southern Folger's sales force.  Drawing all reasonable inferences in Zavalianos's favor requires treating these remarks as age-related comments suggestive of impermissible bias. However, such "isolated and ambiguous remarks, tending to suggest animus based on age are insufficient, standing alone, to prove an employer's discriminatory intent." Tardanico v. Aetna Life & Cas. Co., 41 Mass. App. Ct. 443, 450 (1996) (quoting Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n. 7 (1993)).  Here, Brown's remarks stand alone.  As was the case in Tardanico, "nothing beyond [Brown's] comments . . . and [Zavalianos'] own age suggest that the reason given by [Southern Folger] for discharging [Zavalianos] are a pretext." Id. at 515.  This is especially so where the remarks were not made in relation to the employment decision at issue and where the remarks were made by someone other than the decisionmaker. See, e.g., Straughn v. Delta Airlines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (although statements directly related to the

7

challenged employment action may be highly probative in the pretext inquiry, mere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance."); Tuttle v. Brandeis Univ., Civil Action No. 98-4557-F, 2002 WL 202470, at *8 (Mass. Super. Ct. Feb. 4, 2002), aff'd as amended, 60 Mass. App. Ct. 1119, rev. denied, 441 Mass. 1106 (2004) ("Stray remarks in the workplace, statements by people without the power to make employment decisions, and statements made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases.") (quoting Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrim., 431 Mass. 655, 667 (2000)).  No evidence has been adduced to suggest that Brown played any role in the decision to terminate Zavalianos.  The decisionmaker in this case, Halloran, instructed Brown to apologize to Zavalianos the same day that the second comment was made.

Moreover, where the undisputed evidence is that the same decisionmaker (Halloran) both hired and fired Zavalianos within a two-year period, a presumption arises against an inference of discrimination. "In cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir.1993) (quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991)).  In response, the Plaintiff points to the two comments made by Brown and contends that the Court must draw a reasonable inference that Brown had a voice in Halloran's firing decision, given Brown's role as Plaintiff's supervisor. Even accepting arguendo that Brown had a voice – something for which there is no evidence – despite Halloran's un-rebutted affidavit testifying that he made the decision to fire Plaintiff, in

8

this case that fact would not be not enough to meet the Plaintiff's burden at stage three of the analysis.  The undisputed evidence establishes that Zavalianos had very low sales, that Halloran decided how to allocate sales (and there is no evidence this was done in a discriminatory fashion), that Halloran had warned Zavalianos about his low sales, that Halloran was aware of Brown's comments and had required Brown to apologize, that  Halloran received a complaint about Zavalianos from an important customer in Zavalianos's territory and decided to fire Zavalianos.  Given all of these facts, the Plaintiff has not adduced evidence sufficient to meet her burden to proffer sufficient evidence to warrant a finding of discrimination.

Several additional points bear discussion.  First, the Plaintiff raises a variety of examples of disparate treatment as evidence of discrimination -- e.g., differing mileage rates for Zavalianos and a younger employee.  For each such complaint, Southern Folger has presented a reasonable and un-rebutted legitimate, non-discriminatory explanation for the differential treatment.  See Docket # 26 at 13-18.  Thus, none of these differences support a finding of discrimination and they warrant no further discussion.  Second, the Plaintiff contends that Southern Folger has advanced in the course of this litigation a different reason for Zavalianos's firing than it advanced earlier.  This is incorrect.  While Southern Folger has focused its arguments on just some of the previously-advanced reasons, that is very different than presenting a new reason.  Finally, the Plaintiff contends that the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe," Docket #31 at 4 quoting Reeves v. Sanderson Plumbing Prods. Co., 530 U.S. 131, 151 (2000), thus asserting that the Court must disregard essentially all of defendant's evidence on the theory that the jury could elect to disbelieve all of it.  Reeves does not stand for that proposition.  It did not arise on a review of a summary judgment decision, but rather a reversal of a jury verdict.  Moreover, the evidence

before the Court was sufficient to permit a jury to conclude the "falsity of the employer's explanation" for firing, to determine that the one person "was motivated by age-based animus" and that that person "was principally responsible for" the firing in question. Id. at 151. The Plaintiff has advanced no such evidence in this case.

IV.     CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket # 25) is ALLOWED.

                                          SO ORDERED.

                                           /s/ Leo T. Sorokin
                                          Leo T. Sorokin
                                          Chief United States Magistrate Judge